## MERKLEIN v. HURLEY.

### (District Court, E. D. New York. June 7, 1912.)

BANKRUPTCY (§ 166*)—VOIDABLE PREFERENCES—KNOWLEDGE OF CREDITOR.

Payments by a bankrupt corporation to a creditor *held* not shown to have been made under such circumstances as to give the creditor reasonable cause to believe that the corporation was insolvent, so as to render them recoverable as preferences.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. § 166.*]

In Equity. Suit by Ludwig Merklein, trustee in bankruptcy of the Long Island Baking Company, against William S. Hurley. Decree for defendant.

Mingle & Wood, for plaintiff.
A. Berton Reed, for defendant.

CHATFIELD, District Judge. This action was brought by the trustee in bankruptcy to set aside certain transfers, alleged to be preferential, and given to the principal merchandise creditor of the bankrupt. They consist of an assignment of claim, for supplies furnished, against the city of New York, a mortgage upon certain lands in New Jersey, the transfer of a horse and wagon, and payment of some $4,286.97 in various money payments during the four months preceding the filing of the petition.

The schedules of the bankrupt show few creditors, with but small claims, outside of (1) the defendant in this action; (2) the president of the corporation, who seems to have advanced considerable money and incurred considerable obligations in the conduct of the business; and (3) the holder of $2,900 worth of notes, said to be accommodation paper of the bankrupt. The bankrupt was a corporation, managed by the president. The bankrupt purchased a business from an individual who was then in bankruptcy, and seems to have enjoyed several contracts with the city of New York for the furnishing of bakestuffs to city institutions.

Upon the trial the claim of preferential payment by giving the mortgage to the defendant has been abandoned, although the circumstances under which this transfer was made would certainly have thrown great light upon the knowledge which the defendant had two days before as to whether the bankrupt was in such condition that the

transfer of its property to him would have been preferential, if made in payment of a pre-existing debt. In the same way the charge with relation to the horse and wagon was not presented in the case, nor gone into on the question of knowledge or intent. All claims based upon payments of cash were dropped, except that of a $200 check, given by the president of the corporation personally, who seems to have either had funds of the corporation in his own bank account or was paying the obligation for personal reasons. According to the evidence, this check took the place of a former one of the corporation which had not been paid; but it does not appear that this was known when the city claim was assigned. The testimony shows that a receipt was given for the $200 as payment on account of the bankrupt's debt, although this payment, as has been said, was made by the individual check of the president. But there is nothing in the case to show that the money from which the check was paid was money of the corporation, or that the defendant had any reason to so conclude. The transaction might indicate that the president of the corporation had funds in his possession for which he should account, and his present attitude as a witness for the bankrupt, claiming that the payments to the defendant were preferential, while he, at the same time, is attempting to prove personally large debts against the corporation, renders his testimony of little persuasive value, as against the statements of the defendant, who was called as a witness for the trustee.

With reference to the payment of the city's claim a different situation exists. This assignment was made, according to the testimony, before any investigation of the bankrupt's finances, other than an inquiry as to whether the city's payments were being used to pay the defendant's bills. It appears that the president of the corporation had been trusted by the defendant to pay the defendant's bills for goods used in city contracts out of the proceeds collected from the city; that is, an understanding seems to have existed that the bankrupt corporation would apply the specific payments from the contracts, for which the flour was used, to the payment of these bills. As the corporation got into difficulties, and as the president or his backers became unwilling to advance more money, he did not devote the entire amount of the payment from the city to the purpose agreed, and discovery of this led the defendant to demand an assignment, which he should have filed at once with the city of New York. For some reason he delayed the filing until after the bankruptcy proceedings had been instituted. However, the city had actual notice of the claim, and the money was paid to no one else. No difference, therefore, has resulted, so far as the creditors are concerned, except that the delay in filing the claim has thrown some doubt upon the defendant's good faith. The defendant was in Europe for a time, and his son acted for him in various transactions previous to the assignment; but the evidence plainly shows that he had authority so to do, and the defendant would be bound by his son's knowledge, or failure to investigate, as agency to that extent was plainly established.

If matters had been conducted in the ordinary way, and if the val-

uable business of the corporation had not been an apparent arrangement by which the defendant was to furnish flour to some one who was to furnish supplies to the city, and that the city would not be likely to fail to pay for these supplies, so that the defendant was sure of his money if the accounts were applied in good faith, it would seem likely that any person dealing with a corporation which did not pay its bills would have had reason to suppose that it was in difficulties, and any transfer of its property in payment of a pre-existing debt would have been preferential.

But the present case hardly presents this situation. The question of good faith between the president of the corporation and the defendant was the real matter under discussion until the defendant's suspicions were aroused, and the first transfer was the assignment of the account, to which the defendant has given the peculiar appearance of preference by assuming that the assignment need not be lodged with the city authorities. Some time before this a question of difficulty with the indorsers on certain notes held also by the defendant had caused discussion with the president of the bankrupt; but this argument does not necessarily point to insolvency, and yet might start investigation which would prove insolvency.

The real questions are the intent of the defendant in getting security, and the knowledge of facts which should have made him reasonably suppose that a preference was being given him, and as to both these the testimony does not prove the case necessary to be made out by the plaintiff. The giving of credit, even from week to week or from month to month, would not make the receipt of money on account any less the payment of a pre-existing debt, nor constitute the transfer of assets equivalent to a present consideration (as is suggested by the defendant). Nor would the oral agreement to transfer the city accounts, at the end of the month, be anything more than the giving of credit. But, on the other hand, the arousing of suspicion as to the keeping of faith, which might lead to such investigation as would show knowledge of insolvency, is not equivalent to the knowledge of facts which of themselves would indicate that a preference was actually being given.

On the case as it stands, the defendant may have judgment; but he is not entitled to costs.